GEORGE T. HORVAT and CAROL R. HORVAT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent JAMES J. MINESAL and JOYCE MINESAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Horvat v. Commissioner
Docket Nos. 6415-75, 6417-75.
United States Tax Court
T.C. Memo 1977-104; 1977 Tax Ct. Memo LEXIS 335; 36 T.C.M. (CCH) 476; T.C.M. (RIA) 770104; April 11, 1977, Filed *335 George T. Horvat, pro se. James J. Minesal, pro se. Rodney J. Bartlett, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in Federal income taxes of petitioners as follows: Docket
Taxable Number
Year
Deficiency
6415-75
1971
$ 372.00
6415-75
1972
1,292.58
6417-75
1971
377.86
6417-75
1972
931.29
Upon motion of petitioners, these cases were consolidated for trial, briefing and opinion. The sole issue for our decision is whether the purported conveyances by Petitioners George T. Horvat and James J. Minesal of their lifetime services to their respective family trusts were effective to shift the tax burden on amounts paid as compensation for those services to the respective trusts. FINDINGS OF FACT All of the facts are stipulated and the facts and exhibits incorporated therein are so found. George T. and Carol R. Horvat, husband and wife, who resided in West Allis, Wisconsin, at the time of filing their petition herein, filed joint Federal income tax returns for the taxable years 1971 and 1972 with the Internal Revenue Midwest Service Center, *336 Kansas City, Missouri. James J. and Joyce Minesal, husband and wife, who resided in Milwaukee, Wisconsin, at the time of filing their petition herein, filed joint Federal income tax returns for the taxable years 1971 and 1972 with the Internal Revenue Midwest Service Center, Kansas City, Missouri. On June 21, 1971, Petitioner George T. Horvat created what is styled the George T. Horvat Family Estate (A Trust) (hereinafter the Horvat trust). Petitioners George and Carol Horvat and Mr. Kenneth J. Warford were named trustees. On September 21, 1971, Petitioner James J. Minesal created the James J. Minesal Family Estate (A Trust) (hereinafter the Minesal trust). Petitioners James and Joyce Minesal and Ms. Mary Taylor were named trustees. Shortly after the creation of the respective trusts Petitioners George Horvat and James Minesal executed similar documents which purported to evidence the irrevocable conveyance of the following: * * * the exclusive use of my lifetime services and all resultant earned remuneration and to be earned remuneration from all and any outside source; and all my right, title and interest in said earnings from my services rendered or to be rendered, said *337 services and resultant remuneration therefrom, from this date forth, to be controlled, directed and owned SOLELY by THIS TRUST. In return, each petitioner received 100 units of beneficial ownership of their respective trusts which constituted all of the units of beneficial ownership. Subsequently, Petitioners George Horvat and James Minesal executed documents purporting to sell and convey to their respective family trusts assorted articles of their respective personal property. Moreover, Petitioners Horvat and Minesal conveyed by quitclaim deed their respective real property to their respective family trusts. Petitioners Horvat also assigned their interest in a land sale contract to the Horvat trust. Throughout the taxable year 1971, the Heil Company issued payroll checks aggregating $11,035.42 payable to Petitioner George Horvat as compensation for services rendered and the Kohl Corp. remunerated $1,895.03 to Petitioner Carol Horvat in return for her services. On their Federal income tax return for the taxable year 1971, however, Petitioners Horvat reported only $10,007.78 which equaled the sum of the amounts paid to them before the creation of the Horvat trust. During *338 the taxable year 1972, payroll checks were issued to Petitioner George Horvat totaling $12,538.50 by the Heil Company in return for services. In addition he received a consulting fee from the MELT Organization in the amount of $425. On their Federal income tax return for the taxable year 1972 Petitioners Horvat did not include in income any of the amounts paid to Petitioner George Horvat by the Heil Company and the MELT Organization. In the taxable year 1971, Petitioner James Minesal was issued payroll checks totaling $9,798.99 and $194.25 from W & H, Inc., and the Minesal Trucking Company, respectively, in return for services. On their Federal income tax return for the taxable year 1970, Petitioners Minesal only included amounts aggregating $7,403.11 which were received prior to the creation of the Minesal trust. During the taxable year 1972, Petitioner James Minesal was issued payroll checks totaling $63.24 from W. & H, Inc., and $12,719.59 from Schroeder Plumbing Co., Inc., in return for services rendered. Just as Petitioners Horvat, Petitioners Minesal did not include the amounts paid to Petitioner James Minesal in return for the services he rendered during the taxable year *339 1972. Petitioners Horvat and Minesal each included in income for the taxable year 1972 fees which they received in return for managerial services rendered to their respective trusts. Petitioner Carol Horvat filed Federal fiduciary income tax returns on Form 1041 for each of the taxable years 1971 and 1972 for the Horvat trust. On the 1971 return, the Horvat trust reported as income amounts paid to Petitioner George Horvat subsequent to the creation of the trust. In addition, the trust claimed deductions for such things as real estate tax on the personal residence of Petitioners Horvat, depreciation thereon, home mortgage loan interest and amounts paid by petitioners for gas and electricity. On the fiduciary return, Form 1041, for the taxable year 1972, the Horvat trust reported the amounts paid Petitioner George Horvat by the Heil Company and the MELT Organization, and the Wisconsin State income tax refund issued to Petitioner George Horvat during 1972 less Federal income tax, Wisconsin State income tax and FICA tax withheld from amounts paid Petitioner Horvat in return for his services. In addition, the trust claimed deductions for such things as depreciation on the house *340 occupied by Petitioners Horvat, real estate taxes and mortgage interest expense on that dwelling, dues and subscription for organizations and publications used by petitioners, petitioners' entertainment and similar expenses and management fees paid to Petitioner George Horvat. The Minesal trust also filed a fiduciary return, on Form 1041, for the taxable years 1971 and 1972. For the taxable year 1971, the amounts received by Petitioner James Minesal for services after the creation of the Minesal trust were reported as trust income for that year. The fiduciary return filed for the taxable year 1972 included amounts paid Petitioner James Minesal for services he rendered that year. Expenses and deductions similar in nature to those claimed by the Horvat trust, detailed in the stipulation of facts, were claimed by the Minesal trust for both taxable years in addition to the management fees paid Petitioner James Minesal. The Commissioner, in his statutory notice of deficiency, determined that the Horvat trust could not be recognized for tax purposes and he, therefore, recomputed petitioners' taxable income by including therein for the taxable years 1971 and 1972 the amounts paid *341 Petitioner Horvat in return for his services which were reported as income by the Horvat trust. He further determined that the consulting fee paid Petitioner Horvat was a return of trust corpus and hence not taxable. Similarly, the Commissioner determined that the Minesal trust could not be recognized for tax purposes and thus the amounts attributable to services of Petitioner Minesal reported by the trust were includable in the taxable income of Petitioner Minesal for the taxable year 1971 and 1972. He further determined that the consulting fee paid Petitioner James Minesal by the Minesal trust was a return of corpus and nontaxable. OPINION It is petitioners' sincerely held belief and their contention herein that it is their inalienable right under the Constitution of the United States to transfer the tax burden on income derived from their personal services to a family trust by the conveyance of their lifetime service to such an entity. Respondent contends that petitioners' attempted conveyance of their lifetime services is simply an anticipatory assignment of income and that petitioners are taxable on amounts received as compensation for services irrespective of their contractual *342 obligation concerning the subsequent disposition of such amounts. We agree with respondent. There is perhaps no rule of tax law more certain than that enunciated by , and its progeny, that income must be taxed to him who earns it. Arrangements by which income is siphoned off and diverted to another individual or entity cannot be given effect for tax purposes without regard to their viability under applicable state law. See ; . In , the taxpayer entered into an arrangement with his wife whereby she became entitled to one-half of any income he might thereafter earn. The Court, reasoning that the tax laws could not be so easily circumvented, held the taxpayer responsible for the entire amount of income. Petitioners herein have conceived a similar arrangement. They have transferred to their respective family trusts the exclusive use of their lifetime services and all the resultant remuneration from all and any outside sources. While it is true that a *343 viable business entity actually engaged in business activity cannot be ignored, herein the conclusion is inescapable that petitioners' family trusts were nothing more than a vehicle designed to lessen petitioners' tax burden; clearly the "tax laws permit no such easy road to tax avoidance * * *." . Petitioners herein performed services for various organizations during the period under consideration and were compensated therefor; these amounts were gross income to petitioners when received notwithstanding the trust agreement. . While most of the authority cited by petitioners is simply inapposite, petitioners' essential contention is that they were in fact servants or agents of their respective family trusts and, therefore, the income is properly taxable to the trusts. Petitioners cite , in support of this contention.In Bass this Court held that a viable business entity actually engaged in substantive business activity could not be ignored. That rationale does not extend to the facts presented herein. *344 Similarly, , wherein partnership interests were transferred to a trust does not extend to the transfer of petitioners' personal services. It is clear that the services performed and the business activity conducted was that of petitioners and not their respective family trusts. The very language of the trust agreement supports this conclusion as petitioners conveyed to their respective family trusts "the exclusive use of my [their] lifetime services and the resultant earned remuneration." Petitioners and not the family trusts controlled the earning of the income. See Petitioners herein have conceptually failed to perceive the difference, albeit at times slight, between the anticipatory assignment of income to some other entity and the performance of substantial services by an entity through its agents or employees. Petitioners' conveyance of the respective lifetime services and the income earned through the performance of those services was simply an assignment of income and ineffective to shift the tax burden from petitioners to their family trusts. *345 Accordingly, we hold that the amounts paid petitioners in return for their services was income to them and should have been so reported. Because we find the assignment of income doctrine to be applicable, it is unnecessary to reach respondent's alternative position. Decisions will be entered for the respondent.