WALLACE J. VNUK AND FRANCES R. VNUK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Vnuk v. Commissioner
Docket No. 5582-76.
United States Tax Court
T.C. Memo 1979-164; 1979 Tax Ct. Memo LEXIS 362; 38 T.C.M. (CCH) 710; T.C.M. (RIA) 79164; April 25, 1979, Filed Pipp M. Boyls, for the petitioners. Fredrick B. Strothman, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioners' income tax, plus additions to the tax under section 6653(a), [1] as *364 follows: Year
Deficiency
Sec. 6653(a) Addition
1972
$12,373.90 $ 618.69
1973
32,152.76
1,607.62
1974
29,467.52
1,473.37
Due to concessions by petitioners, the issues for decision are: 1. Whether the purported conveyance by petitioner Wallace J. Vnuk of his lifetime services to a family trust was effective to shift the incidence of taxation on amounts representing compensation to him which were paid to the trust. 2. Whether other income and expense items, reported by the trust, should have been reported by petitioners under sections 671 through 677. 3. Whether petitioners are entitled to deductions for charitable contributions in excess of amounts allowed by respondent. 4. Whether any part of petitioners' underpayment of tax for the years in issue was due to negligence or intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. At the time they filed their petition, petitioners were residents of Kearney, Nebraska. Frances Vnuk *365 is a party only by virtue of having filed joint returns with her husband for the years in issue. When we hereafter refer to petitioner, we will be referring to Wallace Vnuk. Petitioner is a medical doctor whose principal practice is radiology. On September 9, 1972, petitioner created the Wallace J. Vnuk Family Estate (A Trust) (hereinafter referred to as the Trust.) In the declaration of trust, petitioner named his wife Frances and his son John as trustees of the Trust. Later petitioner also became a trustee of the Trust.) In the declaration of trust, petitioner named his wife Frances and his son John as trustees of the Trust. Later petitioner also became a trustee of the Trust. The purpose of the Trust, as set forth in the declaration of trust, was to accept real and personal properties conveyed to the Trust by its creator (petitioner), including the use of his lifetime services and remuneration therefrom. This transfer was made so that petitioner could "maximize his or her lifetime efforts through the utilization of his or her Constitutional rights." The Trust was to be administered by its trustees, with a majority vote of the trustees required for expenditures (including *366 compensation of the trustees). The Trust was established for a period of 25 years; however, at their discretion, by unanimous vote the trustees could liquidate the Trust at any time "because of threatened depreciation in values, or other good and sufficient reason * * *." Upon liquidation, the assets of the Trust were to be distributed to its beneficiaries. Shortly after the creation of the Trust, petitioner executed a document which purported to convey to the Trust "the exclusive use of [petitioner's] lifetime services and all of the currently earned remuneration accruing therefrom." Petitioner's wife executed a similar conveyance, and together they conveyed to the Trust assorted articles of real and personal property. Among the items of personal property transferred to the Trust were most of the household items (excluding clothing) which the Vnuks owned, including such items as a popcorn popper, ice skates, drinking glasses, an aquarium and a bathroom scale. In return, the Vnuks received 100 units of beneficial ownership of the Trust, which constituted all of the units of beneficial ownership. On September 18, 1972, the Trust opened a bank account. Only petitioner was *367 authorized to borrow money from the bank on behalf of the Trust, and only petitioner and his wife were authorized to write checks on the account. The third trustee, petitioners' son John, had no authority to borrow money on behalf of the Trust or write checks on its account. During the years in issue, John was attending college several hundred miles away from Kearney. John's presence at Trust meetings was not necessary, however, since a majority of the trustees (i.e., petitioner and his wife) were authorized to make most decisions on behalf of the Trust. On September 20, 1972, petitioner also transferred his personal residence to the Trust. At a Trust meeting held that same date, the trustees agreed that the Trust should provide its manager (petitioner) with housing, transportation, health care expenses, and educational allowances. In addition, the trustees agreed that the Trust should bear the cost of recreation for the manager's family and all miscellaneous expenses except food and clothing. Expenses attributable to the Vnuk's residence during the years in issue were paid by the Trust. Similarly, the Trust paid the expenses of operation of all automobiles driven by the *368 Vnuks. The Trust was able to pay all these expenses with petitioner's earnings which it received during the years in question. Petitioner operated his radiology practice as a sole proprietorship from January through August 1972. On September 1, 1972, Kearney Radiology Associates, a partnership, was formed by William H. Northwall and the Trust. Northwall had a 35 percent interest in this partnership, and the Trust had a 65 percent interest. During the ensuing 16 months, the partnership's profits (and distributions thereof) were as follows: Period
Profit
Distribution
9/1 -- 12/31/72
$37,835.60
Northwall -- $13,067.87
Trust -- 24,438.90
1/1 -- 12/31/73
90,526.64
Northwall -- 29,565.15
Trust -- 61,290.32
Distributions made by the partnership to the Trust were for petitioner's services. Kearney Radiology Associates was dissolved at the end of 1973. Petitioner also earned $4,782.71 in 1972 and $40,169.16 in 1973 as professional fees from other sources; these were also paid to the Trust. In 1974 petitioner earned $99,406.69 from his radiology practice, all of which was paid to the Trust. After the formation of the Trust in 1972, petitioner *369 reported no income from the practice of medicine. [2]
The Trust also received income from sources other than petitioner's compensation. Specifically, the Trust received interest income of $575 in 1972 and $650 in 1973 from a savings account which petitioner conveyed to the Trust, and a distribution of $648 in 1972 from the Fountain Gardens A & B Ltd. partnership. In 1972 petitioner created the Wallace J. Vnuk Research and Educational Fund. In the following year the name of this entity was changed to the Wallfran Research and Educational Fund. [3] Petitioner gave ten units of beneficial interest in the Trust to Wallfran. In 1974 Wallfran filed an application for Recognition of Exemption Under Section 501(c)(3); such application was not granted. Wallfran was administered by the trustees of the Trust and its purposes included educational loans to future trustees or managers *370 of the Trust. In 1972 petitioner contributed $5,100 to Wallfran. In 1973 petitioner contributed an additional $25,566 to Wallfran. Of this amount, $13,566 was in the form of a note from petitioner to the Trust. [4] The Trust conveyed this note to Wallfran. The remainder of the contribution to Wallfran was explained in petitioner's Journal for the Trust as follows: Date
Payee
Amount
Contrib.
Explanation
1/11/73
Bank
$10,000
WJV
Internetic Stock
R&E Tr.
distr. to WJV R&E
$10,000
Tr.
7/25/73
Wallfran
2,000
2,000
(No explanation
R&E Fund
given)
In the statutory notice, respondent determined that petitioner realized unreported income as follows: Year
Amount
Source
1972
$24,652.64
Income from Kearney Radiology
Associates
4,782.71
Professional fees
575.00
Interest
648.00
Fountain Gardens A & B Ltd.
1973
61,290.32
Income from Kearney Radiology
Associates
40,169.16
Professional fees
650.00
Interest
1974
99,406.69
Professional fees
*371 Respondent disallowed various itemized deductions claimed by the Trust and petitioner, including deductions for charitable contributions. Respondent also determined that petitioners were liable for additions to the tax under section 6653(a). OPINION The first issue is whether the purported conveyance by petitioner of his lifetime services to the Trust was effective to shift the incidence of taxation on his compensation which was paid to the Trust. Respondent contends that this purported conveyance constituted an anticipatory assignment of income, and therefore petitioner must report this compensation as his gross income. We agree. The Supreme Court has described as the "first principle of income taxation" the maxim that income must be taxed to the one who earns it. Commissioner v. Culbertson,337 U.S. 733, 739-40 (1949). Notwithstanding their validity under State law, contractual arrangements that are designed to deflect income away from the one who earns it are not recognized as determinative for Federal income tax purposes. Lucas v. Earl,281 U.S. 111 (1930). In this regard, it matters not whether the ultimate recipient of the diverted *372 income is an individual or, as in the present case, an entity such as a trust. See United States v. Basye,410 U.S. 441, 449 (1973). The case at hand presents the same factual pattern we confronted in Wesenberg v. Commissioner,69 T.C. 1005 (1978). [5] In Wesenberg the taxpayer also established a family trust and made a purported conveyance of his services to the trust. The trust instrument was virtually identical to the trust instrument in this case. Similarly, the taxpayer in Wesenberg had his compensation paid to the trust, and the trust paid all his (and his family's) personal expenses, including insurance, health care costs and travel expenses.We held in Wesenberg that the purported conveyance was an anticipatory assignment of income and was ineffective to shift the incidence of taxation to the trust. We reach the same conclusion here for the same reasons. During the years in issue petitioner had paid to the Trust his compensation from Kearney Radiology Associates and professional fees which he earned. We conclude that respondent correctly determined that these amounts were includible in petitioner's gross income. *373 The next issue is whether other income and expense items, reported by the Trust, should have been reported by petitioners under sections 671 and 677. The application of these sections was fully explained in Wesenberg v. Commissioner,supra. In brief, if the grantor of a trust retains certain powers, then for income tax purposes he is treated as the "owner" of the portion of the trust over which the proscribed powers extend. In Wesenberg we held that the taxpayer retained to tal control over the trust and that the taxpayer should, under the grantor trust rules, be treated as the owner of the trust for tax purposes. With respect to this issue, the facts in this case are virtually identical to the facts in Wesenberg. Several factors indicate that petitioner retained total control over the Trust. First, none of petitioner's powers as trustee required the consent of an "adverse party." Second, petitioner had beneficial enjoyment of the Trust corpus and income. Third, petitioner used the Trust for his own benefit. [6] Finally, the assets of the Trust could revert to petitioner at any time. *374 In light of these facts, and viewing this case in light of our decision in Wesenberg, we sustain respondent's determination on this issue. Respondent correctly determined that interest income and income from the Fountain Gardens A & B Ltd. partnership were includible in petitioner's income, and respondent correctly disallowed deductions for petitioner's personal expenses claimed by the Trust. The next issue is whether petitioner is entitled to deductions for charitable contributions in excess of amounts allowed by respondent. Petitioner contends that he contributed $5,100 in 1972 and $25,566 in 1973 to the Wallfran Research and Educational Fund ("Wallfran"), a charitable organization. Respondent determined, however, that petitioner did not make a contribution to Wallfran and, in the alternative, that Wallfran was not a charitable organization within the meaning of section 170(c). We agree with respondent's alternative contention. Section 170(c) provides, in relevant part, that a charitable contribution is a gift or contribution to a fund organized and operated exclusively for charitable purposes (including education). Whether a trust is organized and operated exclusively *375 for charitable purposes is a question of fact, and the burden of proof is on petitioner. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practices and Procedure.
In this case, petitioner presented no credible evidence establishing that Wallfran was organized or operated for charitable purposes or that the earnings of the trust would not inure to his benefit. As to the operation of Wallfran, the only evidence presented was petitioner's unsubstantiated testimony that Wallfran made a large contribution to a church; we are very skeptical that this contribution was made. As to the organization of Wallfran, it was administered by the trustees of the Trust (in other words, petitioner) and its purposes included educational loans to petitioner's children. This organizational structure opens the door to self-serving actions by the fund's administrator. Since none of the fund's administrators had an interest adverse to petitioner's, it is apparent that Wallfran could be used to pay the costs of educating petitioner's children. We conclude that Wallfran had a "non-charitable purpose substantial in nature." Edgar v. Commissioner,56 T.C. 717, 755 (1971). *376 Moreover, petitioner presented no credible evidence that Wallfran was operated as a charitable institution. On these facts, we sustain respondent's disallowance of any charitable deductions with respect to petitioner's contributions to Wallfran. The final issue is whether petitioner is liable for additions to the tax under section 6653(a). This section provides for an addition to the tax of 5 percent of the "underpayment" where any part of such underpayment is due to negligence or intentional disregard of the rules and regulations of the Internal Revenue Code. The burden of proof again rests on petitioner to rebut respondent's determination. Bixby v. Commissioner,58 T.C. 757, 791 (1972). In this case, petitioner has presented no evidence contrary to respondent's determination. In fact, considering petitioner's education and position, we find it difficult to believe that he envisioned the Trust as anything other than a flagrant tax avoidance scheme. We sustain the additions to the tax imposed here.
Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. Petitioner's reported taxable income and tax were as follows: Year
Income
Tax
1972
$78,506
$30,865
1973
2,305
339
1974
(16,781)
0
Petitioner's reported income for 1972 represents the proceeds from his medical practice for the eight months prior to formation of the Trust.↩
3. For the sake of clarity, both the Wallace J. Vnuk Research and Educational Fund and the Wallfran Research and Educational Fund will be referred to herein as "Wallfran."↩
4. This note reimbursed the Trust for its payment of part of petitioner's federal income tax liability for 1972.↩
5. See also Morgan v. Commissioner,37 T.C.M. 1661↩, 47 P-H Memo. T.C. par. 78,401 (1978).
6. Petitioner used the Trust to pay many of his personal expenses, including health, housing and transportation expenses.↩