**AUTOMATED TYPESETTING, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 78–C–598.**

United States District Court, E. D. Wisconsin.

Sept. 14, 1981.

12. Consent Decree, II(2)(c), p. 4.

13. Consent Decree, II(2)(D), pp. 4–8.

14. Consent Decree II(4), pp. 8–9.

15. Consent Decree II(6) (A-E), pp. 14–16; II(7)(B) (1–3) pp. 18–22; II(7)(C), p. 22; II(7)(E), p. 23.

16. See Footnote # 9.

17. See Consent Decree II generally, pp. 2–16.

18. Consent Decree VIII, pp. 26–28.

Joseph W. Weigel, Milwaukee, Wis., for plaintiff.

Joan F. Kessler, U. S. Atty., by Joseph P. Stadtmueller, Deputy U. S. Atty., Milwaukee, Wis., and Nancy Morgan, Trial Atty., Dept. of Justice, Tax Division, Washington, D. C., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action for the refund of federal unemployment taxes ("FUTA") plus inter-

est and penalties in the amount of $168.80 for the period January 1, 1972 through December 31, 1972. The Government has counterclaimed for federal withholding and federal insurance contribution act ("FICA") taxes plus interest, penalties, and fees for the years 1972 through 1977, in the amount of $55,411.40, and for FUTA taxes interest and penalties for the years 1972, 1976, and 1977, in the amount of $410.33, plus accrued but unassessed interest and penalties thereon. This court has jurisdiction under 26 U.S.C. §§ 7402, 7422 and 28 U.S.C. §§ 1340, 1345. Presently before the court is the Government's motion for summary judgment, which will be granted.

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(e), Federal Rules of Civil Procedure, further provides that when a motion for summary judgment is made and supported as provided above, the adverse party may not rest upon the mere allegations or denials of his pleading, but must set forth by affidavit or otherwise specific facts showing that there is a genuine issue for trial.

The following facts are not in dispute. The taxpayer and plaintiff, Automated Typesetting, Inc., is a Wisconsin corporation, which was incorporated by Louis E. Blaser on December 26, 1962. Louis E. Blaser, Bertha Blaser, his wife, and Robert Blaser, their son, were officers and directors of the taxpayer prior to and throughout the period of April 27, 1972 through December 31, 1977. Prior to April 27, 1972, Louis, Bertha, and Robert Blaser were employees of the taxpayer and were treated as employees for federal employment tax purposes. On April 26, 1972, Louis Blaser executed as grantor an instrument creating the Louis E. Blaser Family Estate (a trust). Simultaneously, Louis Blaser transferred all of the stock of the taxpayer to the Louis E. Blaser Family Estate, receiving all 100 units of beneficial interest in the trust. On April 27, 1972, Louis and Bertha Blaser conveyed to the Louis E. Blaser Family Estate the exclusive use of their lifetime services and their home and certain personal property. On June 13, 1972 Robert Blaser executed as grantor an instrument creating the Robert A. Blaser Family Estate (a trust). On June 16, 1972, Robert Blaser conveyed his lifetime services to the Robert A. Blaser Family Estate. Robert Blaser and his wife Bonnie Blaser also conveyed their home and certain personal property to the Robert A. Blaser Family Estate. Pursuant to these conveyances, the respective trusts were to receive all prospective remuneration derived from the Blasers' labors. The trustees of the Louis E. Blaser Family Estate were Louis, Bertha, and Robert Blaser throughout the period of April 27, 1972 through December 31, 1977. During this period of time the trustees determined the amount of fees that were paid to Louis and Bertha Blaser and what the trust did with the remainder of its income. The trustees of the Robert A. Blaser Family Estate throughout the period of June 13, 1972 through December 31, 1977, were Robert and Bonnie Blaser. During this period of time, the trustees of the Robert A. Blaser Family Estate determined the amount of fees that were paid to Robert and Bonnie Blaser and what the trust did with the remainder of its income.

In separate agreements dated April 27, 1972, the taxpayer contracted with the Louis E. Blaser Family Estate for the services of Louis and Bertha Blaser, and agreed to pay the trust $15,000.00 per year for the services of both. No other written agreements were entered into between the taxpayer and the Louis E. Blaser Family Estate for the services of Louis or Bertha Blaser or for the services of any other party. The taxpayer also contracted with the Robert A. Blaser Family Estate for the services of Robert Blaser, and agreed to pay the trust the following amounts:

| Date of Agreement | Amount Payable each year | Rate of Payment |
|---|---|---|
| 6–16–72 | $ 10,000.00 | $833.00 per month |
| 1–1–74 | 14,000.00 | $6.00 an hour $9.00 an hour after 40 hours a week |
| 1–1–75 | 16,000.00 | $6.80 an hour $10.20 an hour after 40 hours a week |
| 1–1–76 | 13,000.00 | $250.00 per week |
| 1–1–77 | 18,000.00 | $1,500.00 per month. |

No other written agreements were entered into between the taxpayer and the Robert A. Blaser Family Estate for the services of Robert or Bonnie Blaser or for the services of any other party.

During the period April 27, 1972 through December 31, 1977, the taxpayer made payments totalling $72,462.75 to the Louis E. Blaser Family Estate, which payments were made for the services of Louis and Bertha Blaser pursuant to the contract described above. No other payments were made by the taxpayer to the Louis E. Blaser Family Estate during this period. During the period June 16, 1972 through December 31, 1977, the taxpayer made payments to the Robert A. Blaser Family Estate totalling $77,705.19, which payments consisted of payments made for the services of Robert Blaser pursuant to the contracts described above and a payment of $20.00 for some typing performed for the taxpayer by Bonnie Blaser. This total amount constituted all of the payments made by the taxpayer to the Robert A. Blaser Family Estate during this period. During these two periods, the taxpayer did not withhold or pay over any federal income or employment taxes on the payments made to the respective trusts for the services of Louis, Bertha, and Robert Blaser. The taxpayer did pay Wisconsin State Unemployment taxes on the amounts paid to the respective trusts for the services of Louis, Bertha, and Robert Blaser, however. Finally, during these two periods, Louis, Bertha, and Robert Blaser continued to be the sole officers and directors of the taxpayer.

Louis Blaser has been the president and treasurer of the taxpayer since 1962. Louis Blaser's duties included managing the taxpayer, doing the hiring and firing for the taxpayer, assigning work to the taxpayer's other employees, supervising all phases of the taxpayer's typesetting business, purchasing supplies for the taxpayer, and procuring business for the taxpayer. Louis Blaser, along with Robert Blaser, also supervised the taxpayer's bookkeeping functions. The duties that Louis Blaser performed for the taxpayer during the period prior to April 27, 1972, were similar to the duties that he performed for the taxpayer during the period April 27, 1972 through December 31, 1977. During these two periods, Louis Blaser worked on the average in excess of forty hours per week performing his duties as president and supervisor of the taxpayer. Louis Blaser's work time was spent primarily at the taxpayer's business location. His salary from the taxpayer prior to April 27, 1972, was commensurate with the payments made to the Louis E. Blaser Family Estate pursuant to the contract described above during the period April 27, 1972 through December 31, 1977. Prior to April 27, 1972, Louis Blaser received a bonus for successful management whenever the taxpayer had a profitable year, and the taxpayer provided Louis and Bertha Blaser with medical insurance. During the period April 27, 1972 through December 31, 1977, bonuses for the successful management of the taxpayer were paid to the Louis E. Blaser Family Estate, and the taxpayer still provided Louis and Bertha Blaser with medical insurance.

Bertha Blaser has been the secretary of the taxpayer since 1965. She has worked for the taxpayer for thirteen or fourteen years. Prior to April 27, 1972, and for part of the period April 27, 1972 through December 31, 1977, Bertha Blaser worked as a typesetter for the taxpayer. For the remainder of the period April 27, 1972 through December 31, 1977, Bertha Blaser did quality control and proofreading for the taxpayer because she was tired of going to the taxpayer's business location and because she could perform these duties at home. The number of hours that Bertha Blaser worked for the taxpayer varied from week to week for the period prior to April 27, 1972, and for the period from April 27, 1972 through December 31, 1977. Her work

was performed under the supervision of her husband, Louis Blaser. As secretary and a director of the taxpayer, Bertha Blaser attended all corporate meetings of the taxpayer and took notes from which the corporate minutes were prepared.

Robert Blaser has been the vice-president of the taxpayer since 1968. He has worked for the taxpayer for seventeen years. Robert Blaser has performed a variety of duties for the taxpayer. Under the supervision of Louis Blaser, he basically operated the taxpayer by answering the taxpayer's telephones, billing the taxpayer's production, marking up copy for the taxpayer's typesetters, delegating tasks to the taxpayer's other employees, and hiring and firing the taxpayer's employees. Prior to June 16, 1972, and during the period June 16, 1972 through December 31, 1977, Robert Blaser worked in excess of forty hours per week for the taxpayer. During these two periods of time Robert Blaser also sold life insurance for the Chuck Rowe Agency and mutual funds for Phillips Securities, for which he received commissions. After the establishment of the Robert A. Blaser Family Estate, Robert Blaser endorsed his commission checks over to the trust. Both prior to June 16, 1972, and during the period June 16, 1972 through December 31, 1977, the taxpayer paid for fifty percent of Robert Blaser's medical insurance.

Prior to the conveyance of their lifetime services to their respective trusts, Louis and Bertha Blaser, as well as Robert and Bonnie Blaser, reported as income those amounts paid to them by the taxpayer. After such conveyance, Louis and Bertha Blaser, as well as Robert and Bonnie Blaser, reported as income the consulting fees paid to them by their respective trusts pursuant to the contracts described above. The Louis E. Blaser Family Estate and the Robert A. Blaser Family Estate, on fiduciary tax returns, reported as income the payments received from the taxpayer and deducted from income the consulting fees paid to the Blasers, depreciation on their respective residences, and various personal expenses incurred by the Blasers.

█ Unless an employer-employee relationship exists, there is no duty to withhold federal income taxes, pay federal insurance contribution act taxes, or pay federal unemployment taxes. In making its determination of whether this relationship exists, the Court must consider the total situation and must not close its eyes to the realities and substance of the total situation. Where such relationship exists, the designation or description of the relationship by the parties as anything other than that of employer-employee is immaterial. See 8A Mertens, Law of Federal Income Taxation § 47A.03, at 11.

After a careful consideration of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, the Court finds that an employer-employee relationship existed between the taxpayer and the Blasers. Three grounds support the Court's finding.

█ First, the relationship between the taxpayer and the Blasers meets the established concept of employer-employee. The treasury regulations, following the internal revenue statutes, define the term "employee" as follows:

"(a) The term 'employee' includes every individual performing services if the relationship between him and the person for whom he performs such services is the legal relationship of employer and employee. * * *

"(b) Generally the relationship of employer and employee exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. * ,* *

* * * * * *

"(d) Whether the relationship of employer and employee exists will in doubtful cases be determined upon an examination of the particular facts of each case.

"(e) If the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial * * * " Treas.Reg. § 31.3401(c)–1

An employee status is indicated where the evidence shows that the individuals involved perform, on a continuing basis, full-time personal services which constitute an integral part of the business operations of the employer.

■ The treasury regulations, following the internal revenue statutes, define the term "employer" as follows:

"(a) The term 'employer' means any person for whom an individual performs or performed any service, of whatever nature, as the employee of such person. * * *

* * * * * *

"(f) If the person for whom the services are or were performed does not have legal control of the payment of the wages for such services, the term 'employer' means (except for the purpose of the definition of 'wages') the person having such control. * * * " Treas.Reg. § 31.-3401(d)–1

An employer status is indicated where the evidence shows the furnishing of a place to work to the individual who performs services and the legal power to control the actual payment of wages.

1. I.R.C. § 3121, entitled "DEFINITIONS," provides:
   "(d) Employee.—For purposes of this chapter, the term 'employee' means—
   (1) Any officer of a corporation; * * * "

2. I.R.C. § 3306, entitled "DEFINITIONS," provides:
   "(i) Employee.—For purposes of this chapter, the term 'employee' has the meaning assigned to such term by section 3121(d), except that subparagraphs (B) and (C) of paragraph (3) shall not apply."

3. I.R.C. § 3401, entitled "DEFINITIONS," provides:
   "(c) Employee.—For purposes of this chapter, the term 'employee' includes an officer, employee, or elected official of the United States, a State, or any political subdivision

■ The record indicates that Louis and Robert Blaser performed full-time personal services for the taxpayer, that Louis and Robert Blaser supervised every aspect of the taxpayer's business operations, that Louis and Robert Blaser performed full-time personal services not only prior to February 16, 1972 and June 16, 1972, respectively, but performed similar full-time personal services for the taxpayer after the purported change in their employment status. The record also indicates that Louis and Robert Blaser performed their services at the taxpayer's business location, and that the taxpayer was the true source of the funds from which payment was made to the Blasers. The taxpayer had the power to control the actual payment of wages to the Blasers. I conclude that there existed an employer-employee relationship between the taxpayer and the Blasers.

■ Second, as officers of the taxpayer who performed more than a nominal amount of services for the taxpayer, Louis, Bertha, and Robert Blaser are employees of the taxpayer for employment tax and withholding tax purposes. The following internal revenue statutes include in the definition of an employee any officer of a corporation: § 3121(d)(1) [1], § 3306(i) [2], and § 3401(c) [3]. The regulations following these statutes qualify what would otherwise appear from a literal reading of these statutes to be a "per se" test for officers of corporations. Treas.Regs. §§ 31.3121(d)–1(b) [4], 31.-3306(i)–1(e) [5], and 31.3401(c)–1(f) [6] provide

thereof, or the District of Columbia, or any agency or instrumentality of any one or more of the foregoing. The term 'employee' also includes an officer of a corporation."

4. Treas.Reg. § 31.3121(d)–1 provides:
   "(b) Corporate officers.—Generally, an officer of a corporation is an employee of the corporation. However, an officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is considered not to be an employee of the corporation. * * * "

5. Treas.Reg. § 31.3306(i)–1 provides:
   "(e) * * * Generally, an officer of a corporation is an employee of the corporation.

that generally an officer of a corporation is an employee of that corporation. However, an officer of a corporation who as such does not perform any services or performs only minor service for the corporation and who neither receives nor is entitled to receive, directly or indirectly, any remuneration from the corporation is not considered to be an employee of the corporation.

The criteria for determining whether the services performed by an officer of a corporation are substantial enough to render the officer an employee of the corporation were set forth in Rev.Rul. 74–390, 1974–2 C.B. 331:

"In determining whether services actually performed by a corporate officer in that capacity may be considered to be of a minor or nominal nature the character of the services, the frequency and duration of their performance, and the actual or potential importance or necessity of the services in relation to the conduct of the corporation's business, are the primary elements to be considered. Thus, occasional, routine signing of documents, presiding over or attendance at infrequent meetings, and similar isolated or noncontinuous acts having no significant bearing or effect on the day-to-day functioning of the corporation in the conduct of its business, will be considered, as a general rule, to be services of a minor or nominal nature."

Character of the service is the first criteria to be examined. Louis Blaser's duties as president of the taxpayer included hiring and firing the taxpayer's employees, assigning work to the taxpayer's employees, supervising all aspects of the taxpayer's typesetting business, purchasing supplies for the taxpayer, and procuring business for the taxpayer. Louis Blaser's duties did not change after the purported conveyance of his lifetime services to the Louis E. Blaser Family Estate. Robert Blaser's duties as vice-president of the taxpayer included assisting in the day-to-day operations of the taxpayer, answering the telephones for the taxpayer, billing the taxpayer's jobs, assisting in the supervision of the taxpayer's bookkeeping function, marking up copy for the taxpayer's typesetters, hiring and firing the taxpayer's employees, and delegating jobs to the taxpayer's other employees. Robert Blaser's duties did change after the purported conveyance of his lifetime services to the Robert A. Blaser Family Estate. Bertha Blaser's duties as secretary of the taxpayer included attending all of the taxpayer's corporate meetings for the purpose of taking notes, typesetting for the taxpayer, and providing quality control and proofreading for the taxpayer. Bertha Blaser's duties changed somewhat after the purported conveyance of her lifetime services to the Louis E. Blaser Family Estate. This change in duties stemmed primarily from her desire to perform her duties at home rather than at the taxpayer's business location. She continued, however, to perform her duties under the supervision of Louis Blaser.

Frequency and duration of performance of services is the second criteria to be examined. Both Louis and Robert Blaser worked on the average in excess of forty hours per week for the taxpayer prior to the purported conveyance of their lifetime services to their respective trusts. Both Louis and Robert Blaser continued to work on the average in excess of forty hours per week for the taxpayer after the purported conveyance of their lifetime services to their respective trusts. Bertha Blaser's work hours per week for the taxpayer varied

---

However, an officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is considered not to be an employee of the corporation. * * * "

**6.** Treas.Reg. § 31.3401(c)–1 provides:

"(f) * * * Generally, an officer of a corporation is an employee of the corporation. However, an officer of a corporation who as such does not perform any services or perform only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is not considered to be an employee of the corporation. * * * "

from week to week both prior to and after the conveyance of her lifetime services to the Louis E. Blaser Family Estate. This variance, however, was due to the taxpayer's workload.

Actual or potential importance or necessity of the services in relation to the conduct of the corporation's business is the final criteria to be examined. Louis and Robert Blaser supervised and managed every aspect of the taxpayer's typesetting business as shown by the itemization of their respective duties above. Bertha Blaser, while not involved in the supervision and management of the taxpayer's business did function as the corporate secretary for the purposes of taking notes at the taxpayer's corporate meetings as well as worked as a typesetter and proofreader for the taxpayer.

In examining each of these criteria set forth above for determining the substantiality of Louis, Robert, and Bertha Blaser's services to the taxpayer and the evidence relating to each of these criteria, the Court concludes that Louis, Robert, and Bertha Blaser's services were substantial in relation to the conduct of the taxpayer's business and that these services continued uninterrupted after the purported conveyance of their lifetime services to their respective trusts.

The criteria that the Blasers received, directly or indirectly remuneration from the taxpayer is also satisfied. Based upon the facts presented in the defendant's report prior to final pretrial, the trust agreements, the tax returns of the Blasers, the depositions, answers to interrogatories, and admissions on file, the Court concludes that the Blaser's conveyance of their lifetime services amounts to no more than an anticipatory assignment of income. See, *Vnuk v. Commissioner*, 38 T.C.M. 710 (1979), aff'd., 621 F.2d 1318 (8th Cir. 1980); *Horvat v. Commissioner*, 36 T.C.M. 476 (1977), aff'd. per curiam by unpublished decision, 582 F.2d 1282 (7th Cir. 1978), cert. denied, 440 U.S. 959, 99 S.Ct. 1501, 59 L.Ed.2d 772 (1979); *Vercio v. Commissioner*, 73 T.C. No. 99 (March 31, 1980); *Markosian v. Commissioner*, 73 T.C. No. 98 (March 31, 1980); *Nelis v. Commissioner*, 38 T.C.M. 161 (1979); *Wesenberg v. Commissioner*, 69 T.C. 1005 (1978); *Damm v. Commissioner*, 36 T.C.M. 476 (1977). This attempt to deflect income away from the true earner thereof does not, in and of itself, shift the incidence of taxation for federal income tax purposes or shift the incidence of remuneration for determining whether an officer is an employee of a corporation.

Since Louis, Bertha, and Robert Blaser, as officers of the taxpayer, performed substantial and continuous services for the taxpayer and received substantial remuneration from the taxpayer for their service the Court holds that Louis, Bertha, and Robert Blaser were employees of the taxpayer.

Third, since the conveyance of their lifetime services by Louis, Bertha, Robert, and Bonnie Blaser to their respective trusts is simply an anticipatory assignment of income, consistency requires that the monies paid by the taxpayer pursuant to the employment contract with the respective trusts be treated by the taxpayer as wages for federal income and employment tax purposes.

The conveyance by Louis and Bertha Blaser of their lifetime services to the Louis E. Blaser Family Estate and the conveyance by Robert and Bonnie Blaser of their lifetime services to the Robert A. Blaser Family Estate are an assignment of their incomes and are ineffective in shifting the tax burden thereon from the Blasers to the respective trusts involved. As noted above, this attempt to avoid taxation through the deflection of income away from the true earner to another entity does not, in and of itself, shift the incidence of taxation for federal income tax purposes. It would be inconsistent to hold that such an attempt does not shift the incidence of taxation for federal income tax purposes, while holding that such an attempt shifts the incidence of taxation for federal employment tax purposes. Accordingly, since the Blasers were the true earners of the income received by the respective trusts through the services that they provided for the taxpayer and

since Louis, Bertha, and Robert Blaser were employees of the taxpayer it follows that the taxpayer is liable for employment taxes on the amounts paid to Louis, Bertha, and Robert Blaser.

For the foregoing reasons,

IT IS ORDERED that the Government's motion for summary judgment be and hereby is granted.

IT IS FURTHER ORDERED that the Government shall prepare and file within ten days from the filing date of this order a proposed form of judgment. The taxpayer shall have five days thereafter to file comments on the Government's proposed form of judgment or an alternative proposed form of judgment.