119 T.C. No. 5

UNITED STATES TAX COURT

JOSEPH M. GREY PUBLIC ACCOUNTANT, P.C., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4789-00.              Filed September 16, 2002.


        This is an action for redetermination of employment
status.  G is the president and sole shareholder of P, an
S corporation.  P failed to treat G as an employee.  R
determined that G was an employee of P's for purposes of
Federal employment taxes.
        1.  <u>Held</u>:  P is subject to Federal employment taxes
since G, an officer, is an employee within the meaning of
secs. 3121(d)(1) and 3306(i), I.R.C.
        2.  <u>Held</u>, <u>further</u>, P had no reasonable basis for not
treating G as an employee and therefore is not entitled to
relief pursuant to sec. 530 of the Revenue Act of 1978,
Pub. L. 95-600, 92 Stat. 2763, 2885, as amended.
        3.  <u>Held</u>, <u>further</u>, alternatively, P is not entitled to
relief under sec. 530 of the Revenue Act of 1978,
because such provision is limited to worker classification
issues arising under the common law.

Joseph M. Grey (an officer), for petitioner.

Linda P. Azmon, for respondent.

OPINION

HALPERN, Judge:  This is an action for redetermination of employment status.  On February 23, 2000, respondent mailed to petitioner a Notice of Determination Concerning Worker Classification under Section 7436 (the notice).  By the notice, respondent informed petitioner that he had determined that Joseph M. Grey is classified as an employee of petitioner's for purposes of the Federal employment taxes imposed by subtitle C of the Internal Revenue Code and that petitioner is not entitled to relief from that classification under section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885, as amended (section 530).  Attached to the notice is a schedule (the schedule) setting forth petitioner's liabilities for (1) Federal Insurance Contribution Act (FICA) taxes and (2) Federal Unemployment Tax Act (FUTA) taxes, as follows:

| Tax | Quarter or Year | Amount |
| --- | --- | --- |
| FICA | 1/1995 | $1,430 |
| FICA | 2/1995 | 1,430 |
| FICA | 3/1995 | 1,430 |
| FICA | 4/1995 | 1,430 |
| FICA | 1/1996 | 1,448 |
| FICA | 2/1996 | 1,448 |
| FICA | 3/1996 | 1,448 |
| FICA | 4/1996 | 1,448 |
| FUTA | 1995 | 434 |
| FUTA | 1996 | 434 |

On May 1, 2000, petitioner filed a timely petition for review of respondent's determinations, and, on July 24, 2000, petitioner filed an amended petition for such review. The parties agree that if, for Federal employment tax purposes, Mr. Grey was petitioner's employee during the periods in question, and section 530 relief is not available, then the schedule accurately sets forth petitioner's liabilities for Federal employment taxes for those periods. The issues for decision are whether Mr. Grey was petitioner's employee for these purposes and, if so, whether petitioner is entitled to relief under section 530.[1]

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable periods at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. For convenience, dollar amounts have been rounded to the nearest dollar. Petitioner bears the burden of proof. See Rule 142(a).[2]

---

[1] In its amended petition, petitioner disclaimed reliance on sec. 530. When this case was called for trial, petitioner moved to amend its amended petition to raise sec. 530. Petitioner agreed to rely solely on the stipulation of facts to support its claim for relief under sec. 530. On that basis, respondent had no objection to petitioner's motion, and the Court granted it.

[2] Sec. 530(e)(4) places the burden of proof on the Secretary with respect to certain aspects of sec. 530. Sec. 530(e)(4) applies to disputes involving periods after December 31, 1996, and therefore does not apply to this case. Small Business Job Protection Act of 1996, Pub. L. 104-188, sec.

(continued...)

## Background

This case was submitted fully stipulated under Rule 122. The facts stipulated by the parties are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference. The following is a summary of the facts necessary for our discussion.

### Principal Place of Business

At the time the petition was filed, petitioner's principal place of business was in Philadelphia, Pennsylvania.

### History

On April 11, 1991, petitioner was organized as a Pennsylvania professional corporation. Since its organization, petitioner has operated as a public accounting, bookkeeping, and tax preparation firm. That is petitioner's only business and its only source of income. Petitioner is an S corporation within the meaning of section 1361(a)(1).

### Joseph M. Grey

Since petitioner's organization, Mr. Grey has been petitioner's sole shareholder and its president. Petitioner rents part of Mr. Grey's personal residence for use as an office

---

[2](...continued)
1122(b)(3), 110 Stat. 1766 (1996 Act). Sec. 7491, which shifts the burden of proof to the Secretary in certain other circumstances, does not apply to employment tax disputes. Sec. 7491(a)(1).

at a monthly rental of $500. During 1995 and 1996, Mr. Grey performed the following services for petitioner:

1. Solicited business on behalf of petitioner;
2. Ordered petitioner's supplies;
3. Entered into verbal and/or written agreements on behalf of petitioner;
4. Oversaw the finances of petitioner;
5. Collected monies owed petitioner;
6. Managed petitioner;
7. Purchased petitioner's supplies;
8. Obtained clients for petitioner;
9. Maintained customer satisfaction;
10. Performed all bookkeeping services for petitioner;
11. Performed all accounting, bookkeeping, and tax preparation services for petitioner on behalf of petitioner's clients.

During 1995 and 1996, all receivables collected by petitioner were deposited into its checking account. Mr. Grey was the only person with signature authority over that account.

During 1995 and 1996, petitioner did not make regular payments at fixed times to Mr. Grey for his services. Rather, Mr. Grey would take money from petitioner's account to pay for his needs as they arose.

Petitioner did not distribute any dividend to any shareholder during 1995 or 1996, and petitioner did not classify any payment made to Mr. Grey as a dividend in 1995 or 1996.

Petitioner's Returns

For each of 1995 and 1996, petitioner made its return of income on a Form 1120S, U.S. Income Tax Return for an S Corporation (the Forms 1120S). Petitioner reported ordinary income from business of $33,196 and $24,990 for 1995 and 1996,

respectively.  In calculating those amounts of ordinary income, petitioner claimed no deductions for either compensation of officers or salaries and wages.  Petitioner did claim deductions for independent contractor fees in the amounts of $6,000 and $7,200 for 1995 and 1996, respectively, and deductions for rent in the amounts of $193 and $7,040, respectively, for those years. Both the 1995 and the 1996 Form 1120S are signed by Mr. Grey, as president of petitioner, and are dated January 18, 1996, and December 26, 1997, respectively.

For both 1995 and 1996, petitioner issued Mr. Grey a Form 1099-MISC (the Forms 1099-MISC), reporting nonemployee compensation of $6,000 and $7,200, respectively.  For both years, petitioner transmitted copies of such forms to the Internal Revenue Service by filing a Form 1096, Annual Summary and Transmittal of U.S. Information Returns (the Forms 1096).  Both the 1995 and the 1996 Form 1096 are signed by Mr. Grey, as president of petitioner, and are dated January 12, 1996, and March 18, 1997, respectively.  Petitioner also issued Mr. Grey Schedules K-1, Shareholder's Share of Income, Credits, Deductions, Etc. (the Schedules K-1), showing that, for 1995 and 1996, his share of petitioner's ordinary income from business was $33,196 and $24,990, respectively.

Mr. Grey's Returns

For each of 1995 and 1996, Mr. Grey made his return of income on Form 1040, U.S. Individual Income Tax Return. He reported income from petitioner in the amounts shown on the Schedules K-1; i.e., $33,196 and $24,990, for 1995 and 1996, respectively. For 1995, on Schedule C, Profit or Loss From Business (Schedule C), he reported $6,000 classified as "Management and Storage Rental of Office Space for Corporation, and Management and Accounting Services: 1099-MISC received". For 1996, on Schedule C, he reported $7,200, without any identification; on Form 4831, Rental Income, he reported $6,000 as rental income attributable to his personal residence.

## Discussion

### I. Statutory and Regulatory Background

#### A. Internal Revenue Code and Employment Tax Regulations

Sections 3111 and 3301 impose employment taxes upon employers under FICA and FUTA, respectively, based on wages paid to employees. Section 3121(d) defines the term "employee" for purposes of the FICA tax. With certain modifications not relevant here, this definition applies for purposes of the FUTA tax as well. Sec. 3306(i).

Under section 3121(d)(2), the term "employee" includes any individual who has the status of an employee under the common law. Paragraphs (1), (3), and (4) of section 3121(d) describe

other individuals who are considered employees regardless of their status under the common law.  Individuals described in those paragraphs are commonly referred to as "statutory" employees.  One such category of statutory employees consists of officers of corporations.  Sec. 3121(d)(1).  Section 31.3121(d)-1(b), Employment Tax Regs., limits that category as follows:

> (b)  <u>Corporate officers</u>.--Generally, an officer of a corporation is an employee of the corporation. However, an officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is considered not to be an employee of the corporation. * * *

Section 31.3306(i)-1(e), Employment Tax Regs., contains a like limitation specifically applicable to the FUTA tax.

B.  <u>Section 530 of the Revenue Act of 1978</u>

Section 530 provides in relevant part as follows:

> SEC. 530. CONTROVERSIES INVOLVING WHETHER INDIVIDUALS ARE EMPLOYEES FOR PURPOSES OF THE EMPLOYMENT TAXES.
>
> (a)  Termination of certain employment tax liability--
>
> (1) In general.--If--
>
> (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and
>
> (B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,

then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

(2) Statutory standards providing one method of satisfying the requirements of paragraph (1).--For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

\* \* \* \* \* \* \*

(b) Prohibition against regulations and ruling on employment status.-- No regulation or Revenue Ruling shall be published on or after the date of the enactment of this Act  \* \* \* and before the effective date of any law hereafter enacted clarifying the employment status of individuals for purposes of the employment taxes by the Department of the Treasury (including the Internal Revenue Service) with respect to the employment status of any individual for purposes of the employment taxes.

(c) Definitions.--For purposes of this section--

\* \* \* \* \* \* \*

(2) Employment status.--The term "employment status" means the status of an individual, under the usual common law rules applicable in determining the employer-employee relationship, as an employee or as an independent contractor (or other individual who is not an employee).

* * * * * * *

(e) Special rules for application of section.--

(1) Notice of availability of section.--An officer or employee of the Internal Revenue Service shall, before or at the commencement of any audit inquiry relating to the employment status of one or more individuals who perform services for the taxpayer, provide the taxpayer with a written notice of the provisions of this section.

## II. Mr. Grey's Status as an Employee for Employment Tax Purposes

### A. Petitioner's S Corporation Theory

As a preliminary matter, we summarily reject petitioner's argument that, because it is an S corporation that has passed its net income through to Mr. Grey as its sole shareholder pursuant to section 1366, there can be no employer-employee relationship between it and Mr. Grey. That argument is similar to the argument made by the taxpayer in Veterinary Surgical Consultants, P.C. v. Commissioner, 117 T.C. 141, 145 (2001), a case in which, it appears, the taxpayer was advised by Mr. Grey, who was the source of the taxpayer's argument there. See id. at 143-144. We shall not here repeat our refutation of that argument, which can be found in Veterinary Surgical Consultants, P.C. Id. at 145-146.

B.    Petitioner's Reliance on the Common Law

Petitioner further asserts that, notwithstanding section 3121(d)(1), a corporate officer is not an employee for employment tax purposes unless he or she is an employee under the common law.  Petitioner bases that argument on the following language from Tex. Carbonate Co. v. Phinney, 307 F.2d 289, 291-292 (5th Cir. 1962):

> The statutory definition of "employees" as including officers of a corporation will not be so construed as to mean that an officer is an employee per se.  * * * in determining whether an officer is an employee within the meaning of the statutes the usual employer-employee tests are to be applied.  * * *

Petitioner then argues that Mr. Grey was not an employee at common law because petitioner never exercised control over Mr. Grey in the performance of his services.[3]

Even if the common law control factor were relevant to our analysis,[4] petitioner has failed to prove that it did not

---

[3]  We note that petitioner ignores the following additional language from Tex. Carbonate Co. v. Phinney, 307 F.2d 289, 292 (5th Cir. 1962):

> Even though an absence of control is shown, and this as we have noted has not been done, the force of the factor is diminished to near de minimis by the fact that * * * [the service provider] himself was a member of the Board of Directors, a Vice President, and the executive of the Company in charge of its sales and the development of its markets.  * * *

[4]  Secs. 31.3121(d)-1(b) and 31.3306(i)-1(e), Employment Tax Regs., discussed in part I.A., supra, were promulgated after the years at issue in Tex. Carbonate Co. v. Phinney, supra.

(continued...)

exercise control over Mr. Grey in the performance of his services.  In that regard, we note that Mr. Grey chose to do business in corporate form through petitioner.  His assertion before this Court (on behalf of petitioner) that petitioner logically cannot exercise control over him in the performance of his services (presumably owing to his dual role as service provider to, and sole shareholder of, petitioner) amounts to a request that we disregard the corporate form in deciding the issue before us.  That we shall not do.  See <u>Moline Props. Inc. v. Commissioner</u>, 319 U.S. 436 (1943).[5]

---

[4](...continued)
Moreover, the FUTA definition of "employee" in effect for such years, while stating the general rule that such term includes corporate officers, appears to have contemplated that a corporate officer could be an independent contractor under the common law, in which case the officer would not be treated as an employee for FUTA purposes.  See, e.g., sec. 1607(i), I.R.C. 1939.  In light of the regulatory and statutory developments that occurred after the years at issue in <u>Tex. Carbonate Co. v. Phinney</u>, 307 F.2d at 291-292, the Court of Appeals' conclusion therein that "the usual employer-employee tests are to be applied" in determining the status of a corporate officer for employment tax purposes may no longer be relevant.  See <u>C.D. Ulrich, Ltd. v. United States</u>, 692 F. Supp. 1053, 1055 (D. Minn. 1988) ("Under both the weight of the case law and under the treasury regulations, a corporate officer is to be treated as an employee if he renders more than minor services.").

[5]  Petitioner also cites <u>Automated Typesetting, Inc. v. United States</u>, 527 F. Supp. 515 (E.D. Wis. 1981) in support of its position that common law factors should control in determining whether a corporate officer is an employee for employment tax purposes.  The court in <u>Automated Typesetting, Inc.</u>, however, did not eschew the statutory mandate regarding classification of corporate officers; rather, it simply found that the individuals in question were employees under a common
(continued...)

C.    Employee Status Under Section 3121(d)(1)

Having disposed of petitioner's principal arguments, we turn next to the rather straightforward application of section 3121(d)(1).  The parties have stipulated that Mr. Grey was an officer of petitioner's (president) and that he performed numerous services for petitioner.  As a practical matter, those stipulations tend to establish Mr. Grey's status as an employee under section 3121(d)(1) and section 31.3121(d)-1(b), Employment Tax Regs.  However, it is conceivable that Mr. Grey was not acting in his capacity as president when he performed such services.[6]  For the sake of completeness, we now address that possibility.

The parties did not stipulate whether Mr. Grey performed the services in question as petitioner's president or in some other capacity (i.e., as an independent contractor).  However, we think it a fair inference that Mr. Grey performed such services as petitioner's president.  We know that he was president and that he performed numerous services, and there is no convincing evidence, such as a service agreement, that petitioner engaged

---

[5](...continued)
law analysis as well.  Petitioner's focus on the court's discussion of common law factors is therefore misplaced.

[6]  See Rev. Rul. 82-83, 1982-1 C.B. 151, 152 ("It is a question of fact in all cases whether officers of a corporation are performing services within the scope of their duties as officers or whether they are performing services as independent contractors.").

him to perform such services as an independent contractor rather than as president.[7]  The only evidence that Mr. Grey may have provided services to petitioner in a capacity other than as president is the Forms 1099-MISC reporting nonemployee compensation of $6,000 and $7,200 for 1995 and 1996, respectively.  Since those forms were prepared only for tax purposes and are uncorroborated, we give them no weight.

    D.   Conclusion

    We find that Mr. Grey performed numerous services for petitioner in his capacity as petitioner's president and that he was therefore an employee of petitioner's for employment tax purposes as provided in section 3121(d)(1).

III.  Availability of Section 530 Relief

    A.  In General

    Section 530(a)(1) provides that an individual will be deemed not to be an employee of the taxpayer's for employment tax purposes, notwithstanding the actual relationship between the taxpayer and the individual, if the taxpayer satisfies three requirements.  First, the taxpayer must not have treated the individual as an employee for any period.  Second, the taxpayer must have consistently treated the individual as not being an

---

    [7]  See also Van Camp & Bennion v. United States, 251 F.3d 862, 866 (9th Cir. 2001) ("fundamental decisions regarding the operation of the corporation * * * are customarily made by corporate officers or other employees").

employee on all tax returns for periods after December 31, 1978. Third, the taxpayer must have had a reasonable basis for not treating the individual as an employee. To qualify for relief under section 530(a)(1), a taxpayer must satisfy all three requirements.

Respondent concedes that petitioner meets the first requirement and does not argue that petitioner fails to meet the second requirement. Rather, respondent asserts that petitioner fails to meet the third requirement; i.e., respondent asserts that petitioner had no reasonable basis for not treating Mr. Grey as an employee.

B.   Reasonable Basis

Section 530(a)(2) provides a safe harbor for satisfying the reasonable basis requirement of section 530(a)(1). Under that safe harbor, a taxpayer will be treated as having a reasonable basis for not treating an individual as an employee if it can establish that, in so treating the individual, it reasonably relied on the existence of any of the circumstances listed in subparagraphs (A), (B), and (C) of section 530(a)(2).[8] The parties did not stipulate whether petitioner relied on any of the

---

[8]  Sec. 530(e)(4) provides that, if a taxpayer makes a prima facie case that it meets the requirements of the sec. 530(a)(2) safe harbor, then the Secretary bears the burden of proving otherwise. Sec. 530(e)(4) does not apply to the periods here at issue, see supra note 2, and, in any event, petitioner has not made such a prima facie case.

circumstances set forth in section 530(a)(2), and nothing else in the record establishes what, if anything, petitioner relied on during the periods at issue in not treating Mr. Grey as an employee. Accordingly, petitioner must establish the reasonableness of its treatment of Mr. Grey without the aid of section 530(a)(2).

Petitioner cites Tex. Carbonate Co. v. Phinney, 307 F.2d 289 (5th Cir. 1962), and Automated Typesetting, Inc. v. United States, 527 F. Supp. 515 (E.D. Wis. 1981), in support of its assertion that it had a reasonable basis for not treating Mr. Grey as an employee. We have already discounted petitioner's reliance on those cases in our rejection of petitioner's argument that the determination of whether a corporate officer is an employee for employment tax purposes is based on the application of common law factors. For the reasons discussed in part II.B., supra, and in light of section 3121(d)(1) and section 31.3121(d)-1(b), Employment Tax Regs., we conclude that those cases do not provide petitioner a reasonable basis for not treating Mr. Grey as an employee. Indeed, one might fairly question whether it is ever reasonable for a taxpayer to treat a statutory employee as a nonemployee for employment tax purposes; i.e., whether a service provider's status as a statutory employee precludes the application of section 530. So far as we are aware, no court has ever squarely addressed this issue. As discussed below, our own

analysis of the statute and its history leads us to the conclusion that section 530 is limited to controversies involving the employment tax status of service providers under the common law (i.e., controversies involving persons who are not statutory employees). This conclusion provides an alternative ground for denying petitioner relief under section 530.

C. Analysis of the Scope of Section 530

Although subsection (a) of section 530 by its terms is not limited to situations involving worker classification under the common law, the same cannot be said of subsections (b) (moratorium on further guidance) and (e)(1) (notice requirement) of section 530. See sec. 530(c)(2), defining the term "employment status", which appears in subsections (b) and (e)(1), in terms of "the usual common law rules applicable in determining the employer-employee relationship". While it can be argued that the restricted scope of the moratorium in subsection (b) is not necessarily inconsistent with a broad interpretation of the relief provision of subsection (a), such an argument is more problematic as applied to the notice requirement of subsection (e)(1).[9] That is, under a broad interpretation of subsection (a), some taxpayers who are eligible for relief under that

_____

[9] Sec. 530(e)(1) applies to audits commencing after Dec. 31, 1996. 1996 Act sec. 1122(b)(2). Because we refer to sec. 530(e)(1) solely in conjunction with our interpretation of sec. 530(a), we need not determine (and the parties have not established) whether sec. 530(e)(1) itself applies to this case.

subsection would be entitled to notice of the existence of such relief in accordance with subsection (e)(1), while other potentially eligible taxpayers would not be entitled to such notice.  It is difficult to conceive that Congress intended such a bifurcated notice provision.

The history of the enactment of section 530 confirms that Congress did not intend section 530(a) to apply in the case of a statutory employee.  H. Rept. 95-1748 (1978), 1978-3 C.B. (Vol. 1) 629, is the report of the Committee on Ways and Means (the committee) that accompanied H.R. 14159, 95th Cong., 2d Sess. (1978), the text of which was generally followed by the conference committee in formulating the conference agreement that was enacted as section 530 of the Revenue Act of 1978, Pub. L. 95-600, 93 Stat. 2885.  See H. Conf. Rept. 95-1800 (1978), 1978-3 C.B. (Vol. 1) 521, 605.  In H. Rept. 95-1748 at 3 (1978), supra, 1978-3 C.B. at 631, the committee reports:  "With certain limited statutory exceptions, the classification of particular workers or classes of workers as employees or independent contractors (self-employed persons) for purposes of Federal employment taxes must be made under common law rules."  The committee states as reasons for a change in the law (1) increased enforcement by the Internal Revenue Service (IRS) of the employment tax laws and (2) complaints by taxpayers that proposed reclassifications by the IRS involve a change of position by the IRS in

interpreting how the common law rules apply to their workers or industry. Id. at 3-4, 1978-3 C.B. (Vol. 1) at 631-632. The committee describes H.R. 14159, supra, as follows:

> The bill provides an interim solution for controversies between the Internal Revenue Service and taxpayers involving whether certain individuals are employees under interpretations of the common law by --
>
> (1) terminating certain employment tax liabilities for periods ending before January 1, 1979,
>
> (2) allowing taxpayers, who had a reasonable basis for not treating workers as employees in the past, to continue such treatment without incurring employment tax liabilities for periods ending before January 1, 1980, while the committee works on a comprehensive solution, and
>
> (3) prohibiting the issuance of Treasury regulations and Revenue Rulings on common law status before 1980.

Id. at 4, 1978-3 C.B. (Vol. 1) at 632.

As evidenced by H. Rept. 95-1748 (1978), supra, the purpose of H.R. 14159, supra, was to provide an interim solution to controversies over common law employment status by, in part, allowing taxpayers who had a reasonable basis for not treating workers as employees under the traditional common law tests to continue to do so, while Congress worked on a comprehensive solution to the common law classification problem. There is no suggestion in H. Rept. 95-1748, supra, of any controversy concerning the classification of workers as statutory employees that required any solution (interim or comprehensive) by Congress. It is, therefore, a fair inference that the reasonable

basis provision was intended only as an interim solution to disputes over common law employment status.

The subsequent history of section 530 is consistent with the history described above. By amendments to section 530, the interim solution encompassed in H.R. 14159, supra, has been extended indefinitely. There is no indication in the legislative history of these amendments that Congress sought to solve any problem with respect to the classification of statutory employees. Most recently, Congress amended section 530 by adding subsection (e) thereto pursuant to section 1122 of the Small Business Job Protection Act of 1996, Pub. L. 104-188, 110 Stat. 1766 (1996 Act). H. Conf. Rept. 104-737 (1996), 1996-3 C.B. 741, is the conference committee report that accompanied H.R. 3448, 104th Cong., 2d Sess. (1996), which, as enacted, became the 1996 Act. H. Conf. Rept. 104-737, at 199 (1996), 1996-3 C.B. 741, 939, makes clear the conferees' view: "[Section 530] generally allows a taxpayer to treat a worker as not being an employee for employment tax purposes * * *, regardless of the individual's actual status under the common-law test, unless the taxpayer has no reasonable basis for such treatment."

D. Conclusion

We find that petitioner is not entitled to relief under section 530 on the alternative grounds that (1) petitioner had no reasonable basis for not treating Mr. Grey as an employee, and

(2) relief under section 530 is not available with respect to statutory employees.

IV. <u>Summary</u>

We have found that Mr. Grey was an employee of petitioner's within the meaning of section 3121(d)(1) and that petitioner is not entitled to relief under section 530. Therefore, petitioner is liable for Federal employment taxes for the periods at issue as set forth in respondent's notice.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent and in accordance with</u> <u>the parties' stipulations as to</u> <u>amounts</u>.