120 T.C. No. 15


UNITED STATES TAX COURT


MEDICAL EMERGENCY CARE ASSOCIATES, S.C., AN ILLINOIS CORPORATION,
Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8259-01.                    Filed May 19, 2003.


    P was a medical service corporation that provided
emergency medical services to hospitals.  P contracted
with physicians to staff hospital emergency rooms.  P
treated those physicians as independent contractors.  P
failed to timely file required Forms 1096 and 1099, for
1996.  P delinquently filed those forms on a basis
consistent with its treatment of the physicians as
independent contractors.

    R determined that the physicians were employees,
and that P was not eligible for relief under sec. 530
of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat.
2885, as amended (sec. 530).  R determined that P did
not meet the filing requirement of sec. 530(a)(1)(B).
R's interpretation of sec. 530(a)(1)(B) requires that a
taxpayer timely file all required returns in order to
be eligible for sec. 530 relief.

This Court granted R's motion to sever and continue determinations of worker classification and proper employment taxes until after our consideration of P's eligibility for relief under sec. 530.

Held: Because P did not treat the physicians as employees for any period, filed all Federal tax returns on a basis consistent with P's treatment of the physicians as not being employees, and had a reasonable basis for not treating the physicians as employees, P is entitled to relief from employment tax liability pursuant to sec. 530. P's untimely filing of information returns does not preclude P from qualifying for such relief, particularly in the circumstances of this case.

Carmen J. Mitchell, for petitioner.

Linda C. Grobe and David S. Weiner, for respondent.

NIMS, Judge: The petition in this case was filed in response to a Notice of Determination Concerning Worker Classification Under Section 7436 (notice of determination) regarding petitioner's liabilities pursuant to the Federal Insurance Contributions Act (FICA), sections 3101-3128, and the Federal Unemployment Tax Act (FUTA), sections 3301-3311, for 1996. Respondent also determined that petitioner is not entitled to relief under section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885, as amended (section 530).

On February 20, 2002, this Court granted respondent's motion to sever and continue determinations of worker classification and

proper Federal employment taxes. Consequently, the only issue presently before the Court is whether petitioner is entitled to relief from employment tax liability pursuant to section 530.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. For convenience, FICA and FUTA taxes are collectively referred to as employment taxes.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed, petitioner's principal place of business was in Chicago, Illinois.

Petitioner was an Illinois medical service corporation, incorporated in 1990 to provide emergency medical services to hospitals. Larry Mitchell, M.D. (Dr. Mitchell), was petitioner's president and sole shareholder. Petitioner was involuntarily dissolved by the Illinois Secretary of State as of November 1, 2001.

On April 15, 1996, Neena Mitchell, the multiple-handicapped daughter of Dr. Mitchell, died after a chronic illness.

During and after 1990, petitioner entered into contracts entitled "Emergency Department Services Agreements" (EDS Agreements) with several Chicago area hospitals to furnish

professional emergency medical services and full-time physician staffing. In 1996, petitioner had 4 EDS Agreements with 3 Chicago area hospitals.

In order to fulfill its obligations under the EDS Agreements, petitioner hired physicians to staff the hospital emergency rooms. Petitioner entered into contracts entitled "Independent Contractor Agreements" with such physicians. Twenty five of these physicians were reclassified by respondent as employees rather than independent contractors (reclassified physicians).

Relying upon a longstanding, recognized practice of a significant segment of the emergency medicine industry, petitioner treated each of the reclassified physicians as an independent contractor. During 1996, petitioner paid each of the 25 reclassified physicians more than $600. Petitioner did not treat any of the reclassified physicians, or any other worker in a substantially similar position, as an employee for any period beginning after December 31, 1977.

Petitioner filed quarterly employment tax returns, Forms 941, for the quarters ended March 31, June 30, September 30, and December 31, 1996, on July 2, July 31, and December 27, 1996, and January 31, 1997, respectively. Petitioner filed a Federal unemployment tax return, Form 940-EZ, Employer's Annual Federal Unemployment (FUTA) Tax Return, for 1996 on January 31,

1997. Petitioner filed Federal income tax returns, Forms 1120, U.S. Corporation Income Tax Return, for 1993, 1994, and 1995 on February 5, 1997, and for 1996 on May 7, 1997.

The due date for filing Form 1096, Annual Summary and Transmittal of U.S. Information Returns, together with Forms 1099, for 1996 was February 28, 1997. Petitioner did not request an extension of time within which to file its Form 1096 for 1996. Chris Ihejirika, petitioner's accountant from 1991 through early 1997, prepared Forms 1099-MISC, Miscellaneous Income, for petitioner's workers. Petitioner determined that some of the Forms 1099-MISC prepared by Mr. Ihejirika were incorrect, and it prepared corrected Forms 1099-MISC. Petitioner mailed corrected Forms 1099-MISC to each of the reclassified physicians during the period from January 21 through March 5, 1997. After February 28, 1997, petitioner mailed only one corrected Form 1099-MISC to an individual physician.

On May 20, 1997, petitioner mailed two Forms 1096, together with Forms 1099-MISC, to respondent by cover letter dated May 16, 1997. Respondent has no record of receiving the Forms 1096 and 1099-MISC sent by petitioner on May 20, 1997. Sometime after December 22, 1998, petitioner filed Form 1096, together with 46 Forms 1099-MISC, for 1996.

On or about March 4, 1998, respondent began an examination of petitioner's 1996 income tax liability. In December 1998,

respondent began an examination of petitioner's 1996 employment tax liability. By letter dated January 8, 1999, respondent notified petitioner of his proposed determinations that petitioner was not entitled to relief under section 530 and that certain workers should be reclassified as employees, and respondent listed the attendant adjustments to petitioner's Federal employment tax liability for 1996. On May 14, 1999, respondent provided petitioner with Publication 1976, which provided written notice of the provisions of section 530.

OPINION

I. Section 530 Relief

Section 530 operates in enumerated circumstances to afford relief from employment tax liability, notwithstanding the actual relationship between the taxpayer and the individual performing services. The statute provides, in part:

> SEC. 530. CONTROVERSIES INVOLVING WHETHER INDIVIDUALS ARE EMPLOYEES FOR PURPOSES OF THE EMPLOYMENT TAXES.
>
> (a) Termination of Certain Employment Tax Liability--
>
> (1) In general.--If--
>
> (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and
>
> (B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a

> basis consistent with the taxpayer's treatment of such individual as not being an employee,
>
> then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

Congress enacted section 530 to "alleviate what it perceived as the 'overly zealous pursuit and assessment of taxes'" against employers who had, in good faith, classified their workers as independent contractors.  Ewens and Miller, Inc. v. Commissioner, 117 T.C. 263, 276 (2001)(quoting Boles Trucking, Inc. v. United States, 77 F.3d 236, 239 (8th Cir. 1996)).  Section 530 was enacted both as an interim solution to the problems inherent in increased enforcement by the Internal Revenue Service (IRS) of the employment tax laws and in response to complaints by taxpayers that proposed reclassifications by the IRS involved a change of position by the IRS in interpreting how the common law rules apply to their workers or industry.  See Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121, 133 (2002)(citing H. Rept. 95-1748 (1978), 1978-3 C.B. (Vol. 1) 629, 631-632).  The purpose of section 530 was to "provide an interim solution to controversies over common law employment status by, in part, allowing taxpayers who had a reasonable basis for not treating workers as employees under the traditional common law tests to continue to do so".  Id. at 133.  This interim solution

was extended indefinitely by the Tax Equity & Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 269(c), 96 Stat. 324, 552.

II.  Contentions of the Parties

As a preliminary matter, petitioner argues that its Forms 1096 and 1099 mailed to respondent on May 20, 1997, should be deemed filed on that date, since there is proof that they were mailed on that date.  Respondent has no record of receiving those forms.  The due date for filing those forms for 1996 was February 28, 1997.  Even if the Forms 1096 and 1099 mailed by petitioner on May 20, 1997, were received and filed, petitioner would still have failed to timely file those required forms.  Since the primary issue in this case is whether timely filing is required by section 530(a)(1)(B), and reasonable cause for the filing delay is not an issue, whether the Forms 1096 and 1099 are deemed filed on May 20, 1997, is irrelevant.  Consequently, we need not consider petitioner's claim that the Forms 1096 and 1099 mailed on May 20, 1997, should be deemed filed on that date.

The parties agree that petitioner satisfied two of the three requirements of section 530(a).  Specifically, the parties agree that petitioner satisfied the requirement of section 530(a)(1)(A), since petitioner did not treat any reclassified physician as an employee for any relevant period.  The parties also agree that petitioner relied upon a longstanding, recognized

practice of the emergency medicine industry, and thus had a reasonable basis for not treating the reclassified physicians as employees. Consequently, petitioner satisfied the requirement in the flush language of section 530(a).

The parties disagree about whether petitioner satisfied the requirement of section 530(a)(1)(B), which provides that the taxpayer must file all required Federal tax returns (including information returns) on a basis consistent with the treatment of the individual as not being an employee. The parties agree that petitioner ultimately filed all returns (including information returns) on a basis consistent with the treatment of the reclassified physicians as not being employees. However, respondent maintains that "It is respondent's position that part of the reporting consistency requirement in section 530(a)(1)(B), is that the required returns be filed timely." Respondent argues that since petitioner failed to timely file Forms 1096 and 1099 for the periods in question, the relief provided by section 530 is unavailable to petitioner.

Petitioner does not dispute that it was required to file Forms 1096 and 1099. Petitioner, however, argues that since section 530(a)(1)(B) is silent as to timeliness, the required returns merely have to be filed, not timely filed, for a taxpayer to satisfy the requirement of section 530(a)(1)(B).

Petitioner argues that section 530 is to be liberally construed in favor of taxpayers. Petitioner states that section 530 requires "only that Form 1099-MISC be filed for each worker, and precludes relief for Petitioner only if the filing was never made." Petitioner further argues that "The fact that Petitioner complied with the * * * [filing] requirement of Section 530 but not in a timely fashion * * * does not warrant a denial of relief under the safe harbor provisions of that statute, since the statute does not speak to timing".

Respondent claims that "Congress did not intend that the filing requirement be interpreted or treated liberally." Respondent cites General Explanation of the Revenue Act of 1978, at 304 (Comm. Print 1979), by the Staff of the Joint Committee on Taxation, for the proposition that "Except for the filing requirement, taxpayers' eligibility for the prospective relief from potential 1979 liabilities is to be determined under the same tests and the same liberal interpretations of the tests which determined eligibility for pre-1979 relief." (Emphasis added.) Further, respondent claims that "section 530 implicitly requires that the necessary returns be filed timely, as is mandated for all returns throughout the Internal Revenue Code". Respondent argues that given the requirement of timely filing throughout the Internal Revenue Code, if Congress did not intend

to require timely filing, Congress would have included explicit language in section 530 permitting a taxpayer who files delinquent returns to qualify for relief.

In addition to Congressional intent, respondent points to his own longstanding interpretation of section 530(a)(1)(B) in Rev. Proc. 85-18, 1985-1 C.B. 518. Rev. Proc. 85-18 states that relief under section 530(a)(1) will not be granted if Form 1099 has not been timely filed for each worker for any period after December 31, 1978.

Respondent argues that if Congress disagreed with respondent's position in Rev. Proc. 85-18, Congress would have amended section 530(a)(1)(B) to allow delinquent filing. Respondent claims that when Congress was considering amendments to section 530 as part of the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1122, 110 Stat. 1755, 1766, it was aware of Rev. Proc. 85-18 and respondent's positions stated therein with respect to section 530 relief. Rev. Proc. 85-18 is referenced in the legislative history of the 1996 amendments to section 530. See, e.g., S. Rept. 104-281, at 24 n.38 (1996) (citing Rev. Proc. 85-18). Respondent argues that where Congress disagreed with respondent's interpretation of section 530, Congress amended the statute. For example, in the explanation of the 1996 amendments to section 530, the Senate Report states that "a worker does not have to otherwise be an employee of the

taxpayer in order for section 530 to apply.  The provision is intended to reverse the IRS position, as stated in the IRS Draft Training Guide".  Id. at 26.  Respondent argues that given the level of scrutiny Congress gave the area of section 530 relief in 1996, Congress would not have left the language of section 530(a)(1)(B) silent as to timeliness if it disagreed with respondent's position.

III.  Analysis

As to the thrust of "timeliness" in the context of section 530, we conclude, for reasons hereinafter stated, that both parties are off the mark.  Petitioner unconvincingly argues that because of the remedial nature of section 530, the Code-wide pervasiveness of a timely filing requirement must give way to the greater good of section 530 liberality.  Respondent's position that denial of section 530 relief may be used as a (totally disproportionate) penalty for petitioner's offense of late filing is likewise unconvincing in light of the fact that the Internal Revenue Code contains a specific regime for dealing with the consequences of late filing of information returns--which respondent has apparently decided not to invoke. (See discussion infra.)  We agree with petitioner that its late filing of the information returns does not prevent it from satisfying the filing requirement of section 530(a)(1)(B).  The plain language of section 530(a)(1)(B) denies relief only if the required filing

was not made or if the required filing was made on a basis not consistent with treatment of the individual as not being an employee.  As respondent acknowledges, petitioner filed all required returns for 1996 on a basis consistent with the treatment of the reclassified physicians as not being employees. But there is nothing in the language of section 530(a)(1)(B) that requires timeliness along with consistent filing.

The unreality of respondent's approach is illustrated by the following colloquy that took place at trial:

> THE COURT:  Suppose a taxpayer is required to file the 1096 and the 1099s and the office burns down two weeks before the due date and the taxpayer writes a letter to the--well, I don't know who, but somebody in the IRS and says, Look, our office burned down and our records are destroyed; we need some additional time. You're not saying that the statute would preclude the Government from granting an extension of time, are you?

> MS. GROBE:  Yes, Your Honor.  I am.

> *    *    *    *    *    *    *

> This is a relief section.  They still have the ability to come in and argue that these workers are not independent contractors--rather, are not employees; they are independent contractors.

The "relief" proposed by respondent's counsel presents precisely the situation that section 530 was enacted to avoid. In the case before us respondent has proposed a deficiency in the amount of $256,628.61, to dispute which, under respondent's theory, petitioner would be required to prove the status of each

of the reclassified physicians.  The tax liability of each of the reclassified physicians would likewise be affected.

We repeat that respondent correctly states that timely filing of returns is required throughout the Internal Revenue Code.  This includes Forms 1096 and 1099.  The consequences of "Failure to Comply with Certain Information Reporting Requirements" are contained in sections 6721 through 6724. Section 6721(a) deals with "Failure to file correct information returns", which includes Forms 1096 and 1099 (see section 6041A), and section 6721(a)(2)(A) describes a failure to file subject to penalty as "any failure to file an information return with the Secretary on or before the required filing date."  Section 6721(e) prescribes a "Penalty in case of intentional disregard". Section 6722 provides for similar penalties in the case of "Failure to furnish correct payee statements"; section 6723 prescribes a penalty for "Failure to comply with other information reporting requirements", and section 6724 contains, among other things, a reasonable cause waiver.

Nothing in the language or legislative history of section 530 leads us to the conclusion that denial of section 530 relief was meant to be an additional penalty for the failure to timely file information returns, particularly under the circumstances in this case.  Rather, as discussed above, section 530 was enacted to protect taxpayers from having to litigate the status of

individual workers under the common law employment rules.  The Commissioner is entitled to require timely filing and to impose a penalty, when appropriate, for failure to timely file, but not the penalty he seeks to impose here.

Respondent also cites the Commissioner's interpretation of section 530(a)(1)(B) in Rev. Proc. 85-18 and implies that it warrants deference by this Court.  In United States v. Mead Corp., 533 U.S. 218 (2001), the Supreme Court held that an administrative agency's interpretation of a statute must be accorded the level of deference set forth in Skidmore v. Swift & Co., 323 U.S. 134 (1944).  The deference required depends on the thoroughness evident in the agency's consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade.  United States v. Mead, supra at 228 (citing Skidmore v. Swift & Co., supra at 140).

Rev. Proc. 85-18 is consistent with Rev. Rul. 81-224, 1981-2 C.B. 197, which held that a taxpayer, who delinquently filed the required returns during the course of an employment tax audit, was not entitled to relief under section 530.  Rev. Proc. 85-18 has been cited for its requirement of timely filing.  See In re Critical Care Support Servs., Inc., 138 Bankr. 378 (Bankr. E.D.N.Y. 1992)(citing the timely filing requirement of Rev. Proc. 85-18, and holding that the debtor was not entitled to relief

under section 530 based, in part, on the fact that the debtor did not timely file the required tax forms).  Rev. Proc. 85-18, however, provides no reason why it requires timely filing.  Thus, we are unable to ascertain the thoroughness of the agency's consideration or the validity of its reasoning.  Consequently, we do not defer to its requirement of timely filing as a prerequisite to section 530 relief in this case.

We conclude that petitioner's untimely filing of information returns does not preclude petitioner from qualifying for relief pursuant to section 530(a).

IV.   Reasonable Cause for Delinquent Filing

Petitioner argues that if section 530(a)(1)(B) requires timely filing, that section should also provide a reasonable cause exception to the timely filing requirement.  Petitioner claims to have made "a serious effort to overcome delinquencies that occurred in the wake of great personal crisis and loss [the illness, and subsequent death, of Neena Mitchell], and ineffective accounting representation."  Since we conclude that section 530(a)(1)(B) does not prevent petitioner from obtaining section 530 relief, we need not consider this argument.

We hold that petitioner is entitled to relief from employment tax liability pursuant to section 530(a).

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.