T.C. Memo. 2003-161


UNITED STATES TAX COURT


ROBERT E. AND YVONNE R. KOVACEVICH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12815-99.                    Filed June 3, 2003.


    <u>Robert E. Kovacevich</u> and <u>Richard W. Kochansky</u>, for
petitioners.

    <u>Milton B. Blouke</u> and <u>Roger P. Law</u>, for respondent.


            MEMORANDUM FINDINGS OF FACT AND OPINION


    FOLEY, <u>Judge</u>:  By notice of deficiency dated April 28, 1999,
respondent determined deficiencies, additions to tax, and
penalties relating to petitioners' 1992 through 1994 Federal
income tax returns as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a) | Penalty Sec. 6662(b)(1) |
|------|-----------|------------------------------|--------------------------|
| 1992 | $18,232 | $1,330 | $3,176 |
| 1993 | 8,347 | 1,442 | -- |
| 1994 | 13,074 | -- | 2,615 |

After concessions by both parties, the section 6651(a)(1) addition to tax relating to 1992 and all issues relating to 1993 were settled. The remaining issues for decision are whether: (1) Petitioners failed to report income that Robert E. Kovacevich (petitioner) received from Western Management, Inc. (Western); (2) income reported by petitioners is properly classified as gross receipts from a Schedule C business rather than as wages; (3) petitioners are entitled to certain business deductions; and (4) petitioners are liable for section 6662[1] penalties.

FINDINGS OF FACT

Petitioner was admitted to practice law in the State of Washington in 1959. In 1981, petitioner incorporated Robert E. Kovacevich, P.S., a Washington C corporation, whose name was subsequently changed to Western Management, Inc. From its incorporation through 1994, Western's only source of income was from the provision of legal services, and petitioner was Western's sole shareholder, president, and secretary-treasurer. In 1981, Western's board of directors voted to pay petitioner

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

$28,000 in 1982 and $60,000, annually, thereafter.  Petitioner designated Seattle First National Bank, Spokane and Eastern Branch (Seafirst), as the depository for all of Western's funds. All moneys that were paid on Western's accounts receivable were deposited in the Seafirst account.

Petitioner worked 160 to 180 hours per month for Western and performed all services necessary to generate Western's gross receipts.  From 1992 through 1995, petitioner made all major decisions for Western including:  Paying creditors, hiring employees, signing checks, determining employee compensation, renewing Western's malpractice insurance, and signing Western's Federal tax returns.  No other person performed legal services on behalf of Western.

Petitioner received funds from Western as his needs arose and was not compensated for his services at predetermined intervals.  In 1992 and 1994, respectively, Western paid petitioner $135,000 and $132,000.  Western issued checks to petitioners and their creditors (e.g., Nordstrom, Teneff Jewelry, Fit and Hollywood, and National Golf), and petitioner informed Western's accountant and tax return preparer, Bob Moe and Associates (Moe), that these payments were draws.  Western classified the payments as "loans" on its corporate ledgers and did not file Forms 1099-MISC, Miscellaneous Income, relating to the payments.  Western also paid petitioner's law license renewal

fees, office expenses, bar dues, and health insurance premiums and deducted most of these expenses on its corporate income tax returns.

Petitioners maintained, at Farmers and Merchants Bank, a personal line of credit. On the corporate ledgers, Moe listed checks written to Farmers and Merchants Bank and MBNA in the "Receivable from Officer" account. These checks had an "LN" memo description, indicating that the payment related to a loan or the "Receivable from Officer" account.

From 1982 through 1992, Western sponsored a defined benefit plan for petitioner, its only participant. In 1982 and 1984, respectively, Western contributed $46,473 and $81,822 to the plan. In the early 1980s, petitioners and the pension plan invested $160,000 (i.e., petitioners invested $70,000 and the pension plan invested $90,000) in a business venture. Petitioners and the pension plan later sued the venture's promoter and, in 1992, were awarded a $20,852 recovery of their investment. Petitioners retained the pension plan's portion of the recovery (i.e., $11,677).

In 1984, petitioners bought a 1973 Rolls Royce for $27,000. Petitioners used the Rolls Royce for business promotion in 1984 and 1985. In 1985, the automobile's engine failed, and, as a result, petitioners were not able to use the automobile for approximately 2-1/2 years.

With input from Moe, petitioners prepared and filed their 1992 and 1994 joint tax returns. On the Schedule C, Profit or Loss From Business, attached to their 1992 individual income tax return, they reported $103,046 in gross receipts relating to Western's law practice (i.e., $90,000 of compensation and $13,046 of rent payments from Western). On the Schedule C attached to their 1994 individual income tax return, they reported $102,565 in gross receipts relating to Western's law practice (i.e., $90,000 of compensation and $12,565 of rent payments from Western) and a $1,475 depreciation deduction relating to the automobile.

Western's fiscal year ends on March 31. On its 1992, 1993, 1994, and 1995 corporate income tax returns, Western deducted officers' compensation expenses in the amounts of $135,000, $144,000, $132,000, and $133,000, respectively. Petitioner amended Western's 1991 Form 941, Employer's Quarterly Federal Tax Return, with the following statement:

> The amount of earnings of Employee Robert E. Kovacevich was not clear, hence was left off. The Employee paid all Income Tax due, hence the withholding is unnecessary. However the Social Security Tax is due. A completed W-2(c) term is included.

On September 30, 1995, Western made a payment of $22,583 in income tax withholding relating to petitioners' 1992 and 1993 employment taxes.

In 1991, a former client, Terry Stokke, sued petitioner for allegedly committing fraud with respect to a pooled investment. Petitioner settled the lawsuit in 1992 for $39,000 and reported this amount as a Schedule C expense on their 1992 tax return.

At the time the petition was filed, petitioners resided in Spokane, Washington.

OPINION

I.   Jurisdiction

On October 18, 2000, the Court filed petitioners' Motion To Dismiss "Wages" Issue In 1992 For Lack Of Jurisdiction, in which petitioners contended that Western's 1995 payment of $22,583.20 in income tax withholding discharged petitioners' tax liability relating to petitioners' 1992 unreported wages.  We disagree. Congress has specifically given this Court jurisdiction to redetermine a deficiency if a valid notice of deficiency has been issued and a petition has been timely filed.  Secs. 6212(a), 6213(a), and 6214(a); Rule 13(a), (c); Monge v. Commissioner, 93 T.C. 22, 27 (1989); Normac, Inc. v. Commissioner, 90 T.C. 142, 147 (1988).  Therefore, petitioners' motion will be denied.

Petitioners further contend that the notice of deficiency is invalid because respondent did not make a determination.  In support of their position, petitioners state that "the unexplained arrows and rounding of * * * [the amounts of the deficiencies] indicate vagueness."  In the notice, respondent

determined deficiencies in the amounts of $18,232 and $13,074 relating to 1992 and 1994, respectively. See Perlmutter v. Commissioner, 44 T.C. 382, 400 (1965)(holding that a valid notice of deficiency indicates that the respondent has determined a deficiency in tax in a definite amount for a particular taxable year and intends to assess the tax in due course), affd. 373 F.2d 45 (10th Cir. 1967). A notice of deficiency is not invalid for failure to explain the adjustments or to cite statutory provisions on which respondent relied. See, e.g., Henry Randolph Consulting v. Commissioner, 113 T.C. 250, 253 (1999); Campbell v. Commissioner, 90 T.C. 110 (1988); Mayerson v. Commissioner, 47 T.C. 340, 348-349 (1966); St. Paul Bottling Co. v. Commissioner, 34 T.C. 1137 (1960). Accordingly, we reject petitioners' contention.

## II. Unreported Income

Petitioners contend that it was inappropriate for respondent to use the "specific item" method to determine petitioners' deficiencies. The "specific item" method is an indirect method of income reconstruction, which consists of evidence of specific amounts of income received by a taxpayer and not reported on the taxpayer's return. Estate of Beck v. Commissioner, 56 T.C. 297, 361 (1971). It is well settled that taxpayers are required to report every item of income received and maintain records to establish the correct amount of income, deductions, and credits

required to be shown on their tax returns. Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989). Petitioners failed to keep sufficient records. Thus, respondent was justified in using the "specific item" method of proof to determine petitioners' tax liabilities relating to 1992 and 1994. See Estate of Beck v. Commissioner, supra at 353-354 ("there is no restriction on the method or theories by which respondent may test his views that unreported income exists provided they are reasonably calculated to disclose the presence or absence of unreported income"). Accordingly, we reject petitioners' contention.[2]

Petitioner received $135,000 and $132,000 relating to 1992 and 1994, respectively. Petitioners, however, reported only $90,000 in compensation in each year. Petitioners failed to establish that the checks written for petitioners' benefit (e.g., checks written to petitioners' creditors) were not includable in their gross income and failed to adequately rebut respondent's determination of unreported income. Therefore, we conclude that petitioners failed to report additional income in the amounts of $45,000 (i.e., $135,000 income received minus

---

[2] The burden of proof is on petitioners to show that respondent's deficiency determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Sec. 7491 is inapplicable because the examination began before July 22, 1998, the section's effective date. Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 685, 726.

$90,000 income reported) and $42,000 (i.e., $132,000 income received minus $90,000 income reported) relating to 1992 and 1994, respectively.

III. Employment Status

Respondent determined in the notice of deficiency that payments from Western, reported on petitioners' Schedule C, are wage compensation and the business expenses deducted by petitioners are miscellaneous itemized deductions. Respondent contends that petitioner was an employee of Western because he was an officer who performed substantial services. Petitioner, relying on several contentions that have been rejected in similar circumstances, contends that he was not an employee of Western.

Pursuant to section 3121(d)(2), the term "employee" includes any individual who has the status of an employee under the applicable common law rules. Paragraphs (1), (3), and (4) of section 3121(d) delineate "statutory employees". These individuals are considered employees regardless of their status under the common law. See Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121, 126 (2002). Any officer of a corporation is a statutory employee, if such officer performs substantial services for a corporation and receives remuneration for those services. See Veterinary Surgical Consultants, P.C. v. Commissioner, 117 T.C. 141 (2001), affd. sub nom. Yeagle Drywall

Co. v. Commissioner, 54 Fed. Appx. 100 (3d Cir. 2002); sec. 31.3121(d)-1(b), Employment Tax Regs. Petitioner was a statutory employee because at all relevant times he served as Western's president, worked in all significant aspects of Western's business, performed substantial services for Western in his capacity as an officer, and obtained remuneration for such services from Western as his needs arose.

IV. Pension Plan Recovery

Petitioners received and retained an $11,677 recovery that belonged to the pension plan. Petitioners contend that these funds were rolled over into an Individual Retirement Account, but their testimony on this issue was unconvincing, and they did not present any supporting documentation. Accordingly, the $11,677 must be included in income.

V. Schedule C Expenses

For depreciation purposes, automobiles are classified as 3-year property. Rev. Proc. 83-35, 1983-1 C.B. 745. The period for depreciation of an asset begins when the asset is placed in service and ends when the asset is retired from service. Sec. 1.167(a)-11(e)(1), Income Tax Regs. Petitioners contend that the automobile was not placed in service until 1990 because the engine failed in 1985, and the automobile could not be used for a few years. Petitioners further contend that, pursuant to section

280F, which limits the deduction of luxury automobiles, they are entitled to a $1,417 deduction relating to 1994.

Petitioners bought the Rolls Royce for $27,000 in 1984 and placed it in service that year. Once placed in service depreciation continues until the cost basis of the property has been either recovered through previously allowed or allowable depreciation deductions or the property is retired from service (i.e., sold, abandoned, or destroyed). Sec. 1.167(a)-10, Income Tax Regs.; Rev. Proc. 87-57, sec. 2.05, 1987-2 C.B. 687, 688. Petitioners' automobile was not retired from service prior to the years in issue. Thus, pursuant to section 280F(a), the automobile would have been fully depreciated well before petitioners filed their 1994 return, on which they deducted the $1,475. Sec. 280F(a)(2)(B)(iv); sec. 1.167(a)-10(a), Income Tax Regs. Accordingly, their deduction is disallowed. Because petitioner is an employee of Western, we also hold that the $39,000 expense is deductible as a miscellaneous itemized deduction. Sec. 67(a).

VI. Penalties

Section 6662(a) imposes a 20-percent accuracy-related penalty on the portion of an underpayment of tax which is attributable to a taxpayer's negligence or disregard of rules or regulations. Sec. 6662(b)(1). Section 6664(c)(1) provides that no penalty shall be imposed if it is shown that there was

reasonable cause for the underpayment and that the taxpayer acted in good faith.  The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the facts and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on the advice of an accountant may demonstrate reasonable cause and good faith.  See id.  Petitioners contend that they relied in good faith on the advice of Moe, but petitioners did not provide Moe with accurate information (e.g., mischaracterizing payments made by Western to various creditors of petitioners as loans instead of wages).  Under such circumstances, reliance on an accountant's advice is not in good faith and does not establish that the taxpayer acted with reasonable cause.  See Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1061 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973).  Moreover, petitioner is an experienced tax lawyer who manipulated income received from Western.  Petitioner did not exercise due care in the filing of his return and thus is liable for the section 6662(a) penalty.  Welch v. Helvering, 290 U.S. 111, 115 (1933).

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

An order denying petitioners' motion to dismiss will be issued, and decision will be entered under Rule 155.